IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CHARVASEA LANCASTER,

    Petitioner,

v.                                                                              No. 1:18-cv-01143-JDB-jay

DOUGLAS WILLIAMS,

    Respondent.

ORDER DIRECTING CLERK TO MODIFY RESPONDENT,
DENYING § 2254 PETITION,
DENYING A CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, Charvasea Lancaster, has filed a pro se habeas corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254. (Docket Entry ("D.E.") 1.) For the following reasons, the Petition is DENIED.

BACKGROUND

In September and October 2013, when Lancaster was fifteen years old, he went on a "crime spree" in Madison County, Tennessee, "during which [he] stole four vehicles, three lawn mowers, an ATV, and a trailer." *Lancaster v. State*, No. W2017-00553-CCA-R3-PC, 2018 WL 679691, at *1 (Tenn. Crim. App. Feb. 2, 2018), *perm. appeal denied* (Tenn. June 8, 2018). In March 2014, the Madison County grand jury charged him in one indictment with two counts of burglary and six counts of theft of property. (D.E. 13-1 at PageID 184-92.) In a second indictment he was charged with four counts of theft of property, two counts of vehicle burglary, and one count of aggravated burglary. (*Id.* at PageID 193-200.)

"In June 2014, [Lancaster], sixteen years old at the time, entered open guilty pleas to one count of aggravated burglary, one count of burglary, two counts of vehicle burglary, and seven

counts of theft of property in various amounts." *Lancaster*, 2018 WL 679691, at *1. "At the plea submission hearing, the trial court explained to the Petitioner that there would be a separate sentencing hearing where the trial court would decide the Petitioner's sentence." *Id.* In response, Lancaster "stated that he understood this." *Id.* He again affirmed his understanding when "[t]he trial court reviewed the range of punishments for each offense with" him. *Id.* "The trial court also explained to the Petitioner that it could order some of his sentences to be served consecutively, and the Petitioner stated that he understood that." *Id.*

At the sentencing hearing, the trial court ordered four sentences to be served consecutively and several concurrently, resulting in an effective sentence of twenty-two years' incarceration on the eleven convictions. *Id.* In a delayed direct appeal, Lancaster challenged his 22-year effective sentence, arguing "that the trial court erred by imposing partial consecutive sentencing." *State v. Lancaster*, No. W2015-00936-CCA-R3-CD, 2016 WL 6915578, at *1 (Tenn. Crim. App. Nov. 22, 2016). The Tennessee Court of Criminal Appeals ("TCCA") affirmed the sentences. *Id.* at *4.

In February 2015, Lancaster filed a state post-conviction petition. (D.E. 13-12 at PageID 531-44.) After an evidentiary hearing (D.E. 13-14), the post-conviction court denied relief in a written order (D.E. 13-12 at PageID 621-22). The TCCA affirmed, *Lancaster*, 2018 WL 679691 at *3, and the Tennessee Supreme Court declined discretionary review (D.E. 13-21).

## DISCUSSION

Lancaster filed the Petition on August 6, 2018. He asserts that counsel provided ineffective assistance at the plea negotiation stage, which rendered his guilty pleas involuntary. On June 3, 2019, Respondent, Douglas Williams,[1] filed the state court record (D.E. 13) and a response to the

---

[1] The Clerk is DIRECTED to modify the docket to reflect Douglas Williams as Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); Fed. R. Civ. P. 25(d).

Petition (D.E. 14). He argues that the TCCA's decision rejecting Lancaster's claim easily meets AEDPA standards. Petitioner did not file a reply, although allowed to do so.

I.  Legal Standards

    A. Federal Habeas Review

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of

the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Id.* at 750. The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).

A petitioner may also overcome his procedural defaults by establishing a "gateway" claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). To open the gateway, a prisoner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 327.

B. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance

5

prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

II.     Involuntary Guilty Pleas Due to Counsel's Ineffective Assistance

As indicated above, Petitioner asserts that counsel rendered ineffective assistance at the plea negotiation stage and that the ineffectiveness rendered his guilty pleas involuntary.  In support, he alleges that his attorney induced him to plead guilty when she promised him "several times that [he] was going to get out on papers, but worst is that [he] would get a 6[-year sentence] at 30% with [his] charges run together."  (D.E. 1 at PageID 6.)

Respondent acknowledges that Petitioner presented his argument to the post-conviction trial court and to the TCCA in his post-conviction appeal.  He maintains, however, that the appellate court's decision denying relief is not contrary to clearly-established United States Supreme Court law, based on unreasonable factual determinations, or the result of an unreasonable application of clearly-established law to the facts of Petitioner's case.  The Court agrees.

"A guilty plea is valid only if the defendant knowingly, intelligently and voluntarily waives the many constitutional rights associated with a criminal trial ... and has 'sufficient awareness of the relevant circumstances and likely consequences' of the plea." *United States v. Taylor*, 281 F. App'x 467, 469 (6th Cir. 2008) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969), and quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).  "At a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004) (citing *Bousley v. United States*, 523

7

U.S. 614, 618-19 (1998)). In a "subsequent collateral proceeding[]" in which a defendant challenges the voluntariness his plea, his sworn admissions at his change-of-plea hearing "constitute a formidable barrier" to relief. *Blackledge v. Allison*, 43 U.S. 63, 74 (1977). That is so because his "[s]olemn declarations in open court carry a strong presumption of verity." *Id.*

*Strickland*'s two-part test applies to a claim that counsel was ineffective at the plea stage of the criminal proceedings. *Rodriguez-Penton v. United States*, 905 F.3d 481, 486 (6th Cir. 2018). "Where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *Mann v. Richardson*, 397 U.S. 759, 771 (1970)). A petitioner demonstrates prejudice in the plea context by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Because "[t]he standard for prejudice in this context is objective," the petitioner must show "'that a decision to reject the plea bargain would have been rational under the circumstances.'" *Moore v. United States*, 676 F. App'x 383, 386 (6th Cir. 2017) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

In his post-conviction petition, Lancaster asserted "that counsel made promises that if he pl[ed] guilty, [s]he had arranged for [him] to receive a specific sentence of 6 years at 30 percent running concurrent to each other." (D.E. 13-12 at PageID 540.) He posited that counsel's ineffective assistance in that regard rendered his guilty pleas involuntary. (*Id.*) He testified at his post-conviction hearing that "when he pled guilty, he had no idea he could get a sentence as high as twenty-two years." *Lancaster*, 2018 WL 679691 at *1. "The Petitioner explained that trial counsel had only discussed with him a possible sentence of 'six [years] or probation or something

8

like that.'" *Id.* (alteration in original).  He conceded, however, that counsel had reviewed "'numbers' with him and that she told him that the trial court could sentence him to 'whatever [it] want[ed] to give [him].'" *Id.* (alterations in original).  Lancaster further confirmed that "the trial court had reviewed with him the open nature of his plea agreement" at his change-of-plea hearing. *Id.*

Trial counsel testified that she met with Lancaster "several" times and reviewed "'the case backwards and forwards' with him." *Id.*  She explained that the State refused to consider a "negotiated sentence" and "would only agree to an open plea" because the defendant "had confessed to the offenses." *Id.* at *2, 3.  Counsel insisted that she advised Petitioner the trial court would decide "the length and manner of service of his sentences," and that she told him "that there were 'a variety of ways that the sentence could play out.'" *Id.* at *3.  She explained to her client "that the chances of him getting a six-year sentence were 'slim to none.'" *Id.*  She said "she 'talked numbers' with the Petitioner and 'played with them to see what he could possibly get.'" *Id.*  She maintained that, in the event Lancaster decided not to plead guilty, she was prepared for trial.  *Id.*

The post-conviction trial court denied relief.  (D.E. 13-12 at PageID 621-22.)  The court found that Petitioner had "indicated under oath" at his change-of-plea hearing "that he fully understood all of his rights; the penalty ranges for all offenses to which he was pleading; [and] that he was guilty of the offenses to which he was charged." (*Id.* at PageID 621.)  The court further found that Lancaster had "clearly indicated that he was entering his guilty plea[s] freely, voluntarily and without threats or coercions of any kind." (*Id.*)  The court credited counsel's testimony "that Mr. Lancaster thoroughly understood what he was doing by pleading guilty and that she advised him that the likelihood of all the sentences being run concurrently was none." (*Id.*

9

at PageID 622.)  The court therefore held that Petitioner had not established that counsel provided ineffective assistance or that his guilty pleas were involuntary.  (*Id.*)

Lancaster appealed.  *Lancaster*, 2018 WL 679691 at \*1.  In assessing his claim, the TCCA first identified *Strickland*'s standards, as well as the principles announced in *Hill*.  *Id.* at \*2-3.  The court applied those standards to the record adduced at the change-of-plea and post-conviction hearings and determined that Petitioner had not established that his guilty pleas were involuntary due to the ineffective assistance of counsel:

> Here, the post-conviction court accredited trial counsel's testimony that she explained to the Petitioner that his sentences would be up to the trial court and that his chances of getting a six-year sentence were "slim to none." Trial counsel further testified that she "talked numbers" with the Petitioner and "played with them to see what he could possibly get." Additionally, at the plea submission hearing, the trial court explained and the Petitioner stated that he understood that his sentences would be determined at a separate sentencing hearing and that some of his sentences could be served consecutively. Accordingly, we conclude that the post-conviction court did not err in denying the petition.

*Id.* at \*3.

The TCCA's decision survives each deferential AEDPA standard.  First, the decision is not contrary to clearly established Supreme Court law because, as indicated above, the court identified and applied the standards announced in *Strickland* and *Hill*.  *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

Second, Lancaster has not argued that the decision was based on an unreasonable determination of the facts.  In particular, he has not identified any clear and convincing evidence to undermine the post-conviction court's decision to credit trial counsel's testimony.  *See McMullan v. Booker*, 761 F.3d 662, 671 (6th Cir. 2014) ("fact-based determination[s] subject to

10

scrutiny under § 2254(d)(2)" include "facts in the sense of a recital of external events and the credibility of their narrators'") (quoting *Thompson v. Keohane,* 516 U.S. 99, 110 (1995)).  As discussed supra, counsel testified that she never promised Petitioner a particular sentence, advised him that the trial judge would determine his sentence, and warned him that a six-year sentence was highly unlikely.  Petitioner also has not challenged the TCCA's findings that he told the trial court at his change-of-plea hearing that he understood the charges to which he was pleading guilty, the penalty ranges to which he was subject, and the fact that the court would decide his sentence.  This Court's review of the post-conviction and change-of-plea hearing transcripts confirms that the TCCA's findings are fully supported by the record.  (*See* D.E. 13-4 at PageID 315-26, 328-38; D.E. 13-14 at PageID 698-99, 701-02 )

Finally, Petitioner has not established that the appellate court's rejection of his claim is the result of an unreasonable application of clearly established Supreme Court law.  The record supports the TCCA's conclusions that counsel did not perform deficiently and that Petitioner voluntarily pleaded guilty.  The state court's denial of relief was therefore patently reasonable.

Accordingly, the inmate's claim is without merit.  The Petition is DENIED.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3).  A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is therefore DENIED.[2]

IT IS SO ORDERED this 20th day of May 2021.

                        s/ J. DANIEL BREEN
                        UNITED STATES DISTRICT JUDGE

---

[2] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.